*GEORGE W. HAMMOND, ADMINISTRATOR DE BONIS NON OF THOMAS HAMMOND, DECEASED, AND OTHERS, APPELLANTS, v. LORENZO LEWIS, EXECUTOR OF LAWRENCE LEWIS, DECEASED, WHO WAS THE ACTING EXECUTOR OF GEN. GEORGE WASHINGTON, APPELLEE.

In the distribution of the estate of a deceased person, an assignment, to one of the distributees, of a mortgage which is for a greater sum than his distributive share, does not make him responsible to the executors for the difference between his share and the nominal amount of the mortgage, in case the mortgaged premises sell for less than the amount of his share, where the distributee has, with proper diligence, and in good faith, subjected the mortgaged property to sale, and has not bound himself absolutely for the nominal sum secured by the mortgage.

---

* In the progress of the cause, G. W. Hammond also died, and his administratrix became a party; but the suit having been an amicable one, this did not delay the proceedings. It is mentioned only because sometimes the one and sometimes the other is spoken of as the person interested.

THIS was an appeal from the Circuit Court of the United States for the District of Columbia, holden in and for the county of Alexandria.

The facts in the case were these.

General Washington, by his will, executed in 1799, devised all the rest and residue of his estate, real and personal, not before disposed of by said will, to be sold by his executors, at such time, in such manner, and on such credits, (if an equal, valid, and satisfactory distribution of the specific property could not be made without,) as in their judgment should be most conducive to the interest of the parties concerned; and the moneys arising therefrom to be divided into twenty-three equal parts.

On the 19th of July, 1802, the executors assembled the legatees, with a view to consult them upon certain questions arising under the will; and it was agreed that a certain portion of the personal estate should be sold, another portion divided, a certain portion of the lands divided, and the residue sold by the executors.

On the 6th of June, 1803, a meeting of the devisees was held, at which it was agreed that certain lands, lying on the eastern waters, should be sold, and, if purchased by the devisees, such purchaser should pay at three equal annual instalments with six per cent. interest from the day of sale, but to be credited with his proportion of the sales which had there been made, and which were to be divided among the said devisees.

On the 7th of June, 1803, Burdett Ashton, who was entitled, in his own right, and that of his sister, to two-thirds of a distributive share, purchased from the executors property belonging to the estate, for the sum of $9410 20 cents; payable, one-third on demand, one-third on the 7th of June, 1805, and one-third on the 7th of June, 1806.

On the 12th of March, 1805, Ashton mortgaged to the executors three tracts of land in Jefferson county, Virginia, amounting in the whole to one thousand and seventy-six acres, to secure the payment of the purchase which he had made, as above stated.

On the 11th of March, 1806, the executors assigned the mortgage to Thomas Hammond, who was entitled to a full distributive share in right of his wife, and attached to the assignment the following memorandum.    "The executors are not to be made personally liable, in any respect, or on any pretence,

wherein, for, or by reason of the above assignment, and further, the within named Burdett Ashton, Jr., his heirs, executors and administrators, is to have credit for his proportion of $5179 5 cents, being the share of each legatee of said George Washington, of certain sales of real and personal estate made by the said executors, as well as for the proportion of the sister of the said Burdett, as her attorney in fact."

As it was thought that the distributive shares of the said Ashton and Hammond, when added together, would not quite exhaust the debt due from Ashton to the executors, the latter took from Hammond, on the same day on which they made the assignment, a deed by way of mortgage, in which it was stipulated that Hammond should indemnify the executors, and also should pay to the executors whatever surplus might remain, after deducting Hammond's and Ashton's distributive shares from the amount of Ashton's debt to the executors.

On the 2d of April, 1806, Hammond, being indebted to Smith, Calhoun & Co., of the city of Baltimore, in the sum of $5604 64 cents, assigned to them all his right to so much of the mortgaged premises as would be sufficient to satisfy the sum aforesaid. As speedily as possible, Smith, Calhoun & Co., obtained a decree in the high Court of Chancery, in Virginia, to foreclose Ashton's mortgage, who, at the time of such foreclosure, was insolvent, and died so. The result of such sale is thus stated in the opinion of the Circuit Court, delivered in a subsequent stage of the cause.

The property mortgaged by Ashton, sold under decree for (nett proceeds) $3908 46.

| | |
|---|---:|
| The debt of Ashton was - - - - - - - - - | $9410 20 |
| He had a right to retain   - - - - - - - - - | 3452 70 |
| The real amount of Ashton's debt was   - - - | $5957 50 |
| Hammond's claim was - - - - - - - - - - | 5179 05 |
| Amount rec'd by Hammond's mort. to executors - | $778 45 |

At some period between 1819 and 1823, the executors addressed a circular letter to each of the legatees, who had by this time become very numerous, expressing a desire to close their executorial duties, and stating that a difficulty existed in the mode of calculating interest. They say, "there are but two

modes by which our objects can be attained—a reference of the accounts to arbitration, or a suit; the former we should prefer, as most consonant with the injunction of our testator, if it were not attended by insuperable difficulties, on account of the dispersed situation of the legatees, who consequently could scarcely be expected to agree upon the arbitrators; we therefore propose that the legatees should concur in instituting an amicable suit in chancery against us, to which we will immediately file an answer, and obtain an order of reference to the master, to adjust and report the precise sum to which each legatee is entitled; which being done, we can proceed with safety to pay such sums as fast as the money comes to our hands."

In 1823, the legatees, in conformity with the above suggestion, filed a bill in the Circuit Court for the District of Columbia, which the executors immediately answered, admitting the existence of a balance to be distributed, and submitting to any decree which the court might think proper to pass. A special auditor was appointed to state the accounts of the parties.

In 1825, the executors filed a cross bill, alleging that all the parties were not in court, and praying that they might all be brought in. The proper proceedings were accordingly had as to the absentees, and in 1826 the Circuit Court passed a decree directing the sums to be paid to the several legatees, with the exception of the administratrix of Thomas Hammond and of Burdett Ashton. The auditor stated the account of Hammond upon two different principles; in one, giving him credit for $5178 68 cents, a distributive share, and charging him with $4006 24 cents, the gross amount of the proceeds of the mortgage sale; and bringing the executors in debt to Hammond upwards of $4000 : in the other, giving him credit for the same sum, but charging him with the balance of the debt due by Ashton, bringing him in debt to the executors upwards of $2000. The Circuit Court adopted the latter, and decreed that the administratrix of Hammond should pay to the executors the sum of $2158 56 cents, with interest on $1127 27 cents, the principal sum due, from the 1st day of June, 1824.

From which decree, the administratrix appealed to this court.

*Coxe*, for the appellant.

*Jones*, for the appellees.

Mr. Justice DANIEL delivered the opinion of the court.

This is the case of an appeal from a decree of the Circuit Court of the United States, for the District of Columbia.

This suit was originally of an amicable character, and was instituted at the request of the executors of General George Washington, by the legatees under his will, with a view to a definitive settlement of the accounts of the executors and a distribution of the estate. Subsequently to its institution, a cross bill was filed by the executors for the purpose of covering some of the legatees, who had been omitted in the prior proceedings, and the two causes were prosecuted and decreed upon as one suit. The facts out of which the questions now presented for consideration have arisen, are substantially the following.

General Washington, after having disposed of a portion of his estate, devised all the residue of his real and personal property to be sold by his executors, if it could not be equally and satisfactorily divided, and directed the proceeds to be divided into twenty-three equal shares, and distributed by shares and parts of shares, amongst twenty-nine persons named, and others not named, but designated by a collective description. Amongst those having an interest in the estate was Mildred Hammond, the wife of Thomas Hammond, in whose right the appellant claims one share of the twenty-third part of the residue. After a previous distribution by the executors of $7000, the amount arising from further sales, and remaining for distribution at the commencement of this suit, was near $120,000.

Several of the residuary legatees became purchasers at the sales made by the executors, some for more, others for less than their shares or parts of shares to which they were entitled. They gave securities for the amount of their purchases, as other purchasers would have been required to do, with an understanding that their several shares of the estate, when ascertained, should be credited against the sales respectively made to them.

Among those legatees who purchased to an amount exceeding their shares was Burdett Ashton, who was entitled to one-third of one share in his own right, and to one other third of a share in right of a sister, together equal to two-thirds of one-twenty-third or full share of the residuum subject to distribution. This interest of Ashton was subsequently ascertained to be $3425 20

cents. He purchased property in June, 1803, to the amount of $9410 20 cents, payable in three annual instalments; and for securing this debt, with interest from the date, executed to the executors a mortgage on the 12th day of March, 1805.

Thomas Hammond (the husband of the legatee, Mildred Hammond) obtained from the executors an assignment of the mortgage from Ashton for the $9410 20 cents, and executed to them an obligation to account for any surplus which he might receive from Ashton's mortgage, beyond the share of Mildred Hammond, amounting to $5179 50 cents. after crediting Ashton with two-thirds of a share to which he was entitled. The consideration for the assignment to Hammond is stated to be " one dollar in hand paid, but principally on account" of the share of his wife in the residue of General Washington's estate; and they bargain, sell, and assign to the said Hammond, his heirs, &c., all the right, title, interest, estate, claim, and demand of the executors to the within-mentioned land and premises, and to the deed within mentioned. At the foot of the assignment is a memorandum, " that the executors are not to be personally liable in any respect, or on any pretence, for or by reason of the above assignment," and further, " that the within named Burdett Ashton, his heirs, &c., shall have credit for his proportion, and for the proportion of his sister," in one share of the residuum of the estate, &c.

Within less than a month after receiving an assignment from the executors, Hammond assigned Ashton's mortgage to Smith, Buchanan and Calhoun, in consideration of a debt due from him to them. These last assignees filed their bill in the Supreme Court of Chancery in Virginia, to foreclose Ashton's mortgage, and to this bill the executors of Washington were made parties defendants. In their answer these executors admit the interests of Hammond and Ashton in the estate of their testator, the assignment by them to Hammond of Ashton's mortgage, and they ask nothing on their own account except this, that as certain funds of the estate upon the basis of which Ashton's proportion had in part been calculated, might turn out to be unavailable, he, Ashton, might be required to indemnify the executors against such a contingency.

The settlement of Ashton's account having been by the Court of Chancery referred to the master, a large balance was reported

as due from Ashton on the mortgage, after allowing him a credit for his own and his sister's shares of a legatee's proportion. The court decreed a foreclosure of the mortgage, and a sale of the mortgaged premises to raise the balance due from Ashton. The sale made under the decree produced a sum considerably less than the amount of the debt from Ashton to the executors of Washington.

In the record in this cause are found accounts stated under orders of the Circuit Court between the executors of Washington and the distributees, under the will of their testator. In the account of Burdett Ashton, after crediting him with the proceeds of the mortgage sale, a balance is struck against him of $6197 70. The account with Hammond is stated under two aspects; under the first, in which he is charged with the nett proceeds only, of Ashton's mortgage, he is a creditor, by the sum of $4084 30 cents; under the second, in which Hammond is charged with the entire balance due from Ashton, without regard to the actual proceeds of the mortgage, he is made a debtor. The Circuit Court, upon the hearing of this cause, being of the opinion that Hammond was absolutely bound to the executors of General Washington for whatever amount the mortgage debt of Ashton exceeded the share of Mrs. Hammond as a legatee, notwithstanding the failure of the mortgaged premises to produce the amount of the debt for which they were pledged; decreed, in conformity with the second statement of the master of Hammond's account, (No. 11,) that the administratrix of Hammond, out of the assets in her hands to be administered, should pay to the executors of George Washington the sum of $2158 56 cents, the balance appearing to be due to them by statement No. 11, with interest on $1027 27 cents, the principal sum due from the 1st day of June, 1824.

The basis of the above decree of the Circuit Court, and it is the foundation on which the argument for the appellees has been conducted, is the assumption, that Hammond, in taking an assignment of Ashton's mortgage from the executors of Washington, undertook to guaranty the sufficiency of the mortgage subject to extinguish the amount for which that subject was pledged, and bound himself absolutely to be accountable for that entire sum.

It is difficult to reconcile such a course on the part of Ham-

mond with rules of common prudence or probability, nor can a claim to power in the executors to make such an exaction upon Hammond be viewed as consistent with fairness, or as called for by any obligation incumbent upon these executors. Hammond knew, when he took the assignment of Ashton's mortgage, that he was entitled to $5179 50 cents, admitted by the executors to be in their hands, or within their control. This is apparent, and is expressed both in the memorandum required by the executors to be appended to their assignment of Ashton's mortgage, and in the separate instrument of indemnity executed to the executors by Hammond, upon his receiving that assignment. Under such circumstances, what rational inducement could exist on the part of Hammond for binding himself for the solvency of Ashton, or for substituting himself with the executors as a debtor in Ashton's place? The court can perceive no such inducement, nor can recognise any right in the executors to require any thing of this kind, with a full knowledge, on their part, of Hammond's interest in the estate, and with an admitted fund in their hands for its satisfaction. They had no power to impair in any degree his claim upon them, nor to impose a mean for its payment, less certain and safe than the assets acknowledged by them to be adequate. It is laid down by the Circuit Court, and insisted on in the argument here, that the terms of the assignment to Hammond, as well as those of the instrument of indemnity given to the executors upon receiving that assignment, constitute an agreement that Hammond should be unconditionally bound for Ashton's debt. We have shown that this conclusion is in accordance neither with prudence nor probability, in the transactions of life—that it was not sustained by any duty, or even by fairness on the part of the executors; let us see how far it is warranted by the language of the instruments referred to as amounting to express and positive contract. In the written assignment to Hammond, this is the language used: "Have bargained, sold, assigned, &c., all the right, title, &c., in and to the within-mentioned land and premises, and the deed within mentioned," &c. Such terms were indispensable in that assignment, in order to give to Hammond control of the mortgage, either for its enforcement in his own behalf or for its transfer to others: nothing is said, in terms, in this assignment, about the debt in-

tended to be secured by the mortgage, neither in relation to any full equivalent for it, received by Hammond, which should bind him for it *in toto*, nor in relation to any entire and absolute transfer of it by the executors; and this surely was the place in which such terms, or conditions, if they really belonged to the contract, should have been expressed. The view here presented is fortified by the instrument of indemnity executed by Hammond to the executors contemporaneously with the assignment by the latter to him of Ashton's mortgage. This instrument of indemnity, after reciting that the executors had assigned, &c., a deed due them from Ashton, specifying no sum, no debt *in numeris;* after reciting too that Ashton was entitled to a portion of the assets, proceeds thus: "And whereas it is supposed that the amount of the said debt due from Burdett Ashton, after making the discounts aforesaid, to which he may be entitled, will exceed the said sum of $5179 50 cents, due to the said Thomas Hammond, as agreed; for which excess, the said Thomas Hammond is willing to give security; now if the said Thomas Hammond shall well and truly pay, &c., such sum as the debt due from the said Burdett Ashton, shall exceed," &c. This portion of the instrument, beginning, "whereas it is supposed that the amount of the debt due from Ashton, after making the discounts to which he is entitled," &c. forcibly elucidates the meaning and objects of the parties to that contract. The amount of Hammond's interest in the estate, the amount too of Ashton's debt to the executors, and of the portion claimed in his own right, and in right of his sister, were all known. With regard to these, then, there was no uncertainty. The supposition, therefore, expressed in this instrument could have no applicability to matters thus ascertained; that supposition could have been designed to apply only to the contingency of the mortgage subject producing a sum greater than the distributive share of Hammond in the estate; in which event, he was to be responsible for the excess, and for nothing beyond it. This provision cannot be correctly interpreted as binding Hammond, however inadequate the mortgage subject might prove to meet his share of the assets, to carry into the estate and pay to the executors a sum he never had received, and which, from the nature of things, he could not possibly receive; in other words, to pay to these executors his own

money.   Upon taking an assignment of Ashton's mortgage, Hammond was bound for good faith and ordinary diligence in prosecuting it.   These obligations appear to have been fulfilled, for the executors who were made parties to the suit for fore-closure take no exception to any thing that had been done or omitted in reference to the security they had transferred.

This court, therefore, while it will not decree against the execu-tors the difference between the proceeds of Ashton's mortgage and the distributive share of Hammond, as stated in the report of the master, is very clear that Hammond can upon no correct principle be held responsible to the executors for the difference between those same proceeds and the amount of the debt due from Ashton, which the mortgage was designed to secure; and that in decreeing against the administratrix of Hammond for that difference, the Circuit Court has committed an error for which its decree should be reversed.

This court doth accordingly reverse the decree of the Circuit Court, with costs, and remand this cause thereto, to be proceeded in conformably to the principles of this decision.

### ORDER.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Columbia, holden in and for the county of Alexandria, and was argued by counsel.   On consideration whereof, it is now here ordered, adjudged, and decreed by this court, that the decree of the said Circuit Court, in this cause, be and the same is hereby reversed with costs, and that this cause be and the same is hereby remanded to the said Circuit Court, with directions to proceed therein conformably to the opinion of this court.